ORDERED.

Dated:  April 05, 2023

_____
Jason A. Burgess
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:

WILLIAM J. NAMEN, II                                    Case No. 3:22-bk-02272-BAJ
                                                        Chapter 11
                Debtor.
_____/

**FINDINGS OF FACT AND CONCLUSIONS OF LAW GRANTING
MOTION FOR SANCTIONS FOR VIOLATION OF THE AUTOMATIC STAY**

This Case came before the Court for trial on January 12, 2023, on the *Motion for Sanctions for Violation of the Automatic Stay* (the "Motion") (Doc. 14), filed by the Debtor, and the *Response in Opposition to the Motion* (the "Response") (Doc. 22), filed by Cadlerock Joint Venture, LP (the "Creditor").  At the conclusion of the trial, the Court directed the parties to submit post-trial briefs.

The Debtor alleges that the Creditor violated the automatic stay by failing to *timely* dissolve a pre-petition Writ of Garnishment (the "Writ"), which resulted in continued post-petition garnishments detrimental to the Debtor's reorganization efforts.  By the Motion, the Debtor seeks sanctions against the Creditor for the resulting damages.  The Creditor argues that it was not "required to affirmatively dissolve the Writ simply because [the] Debtor filed for bankruptcy." (Doc. 70, p. 2).  The Creditor also attempts to shift the blame for the post-petition garnishments to the garnishee.  For the reasons set forth below, the Court finds the Creditor had an affirmative

duty to dissolve the Writ, and failed to act timely, even after the Court specifically directed the Creditor to take *immediate* action to dissolve the Writ. Therefore, the Court will sanction the Creditor for willfully violating the automatic stay and failing to comply with a court order.

## Findings of Fact

The Debtor filed a petition for relief under Subchapter V of Chapter 11 of the Bankruptcy Code on November 10, 2022 (the "Petition Date"). The Debtor owns and operates a podiatric surgery business, William J. Namen, II, D.P.M., P.A., in Jacksonville, Florida.

As of the Petition Date, the Debtor had multiple deficiency judgments against him, which stemmed from various financial setbacks related to certain business properties and partnerships in which the Debtor had an interest. (Doc. 4, p. 1). These financial difficulties also resulted in sizeable IRS liens being entered against the Debtor in 2010 and 2011. Id.

On January 3, 2013, as the result of a foreclosure deficiency, the Circuit Court for the Fourth Judicial Circuit in and for Duval County, Florida (the "State Court") entered a judgment against the Debtor in the amount of $1,052,039.22, with a statutory interest rate of 4.75% per annum (the "Judgment").[1] On May 28, 2021, the Judgment was assigned to the Creditor and subsequently recorded in the Official Records of Duval County, Florida.

On October 4, 2022, the State Court issued the Writ, which named Blue Cross Blue Shield ("BCBS") as the garnishee, and William J. Namen, a/k/a William J. Namen, II, as the defendant. The Writ did not reference any other person or entity. (Cr.'s Ex. 1).

On October 10, 2022, the Creditor served the Writ upon BCBS. In response to the Writ, BCBS filed an answer in the State Court Action. In the answer, BCBS stated it was financially indebted to the Debtor and that it would "withhold the sum of $11,838.49 and continue to withhold

---

[1] Duval County Circuit Court Case 16-2010-CA-003818-XXXX-MA. (the "State Court Action") (Debtor's Ex. 1).

*future* payments due and owing to the Defendant *until* further Order of the Court." (Cr.'s Ex. 3, p. 2) (emphasis added).

Soon after the Petition Date, Debtor's counsel filed a Suggestion of Bankruptcy in the State Court Action to alert the Creditor to the existence of the automatic stay under 11 U.S.C. § 362 and requested that the "garnishment placed on Blue Cross Blue Shield [be] released as soon as possible[.]" (Cr.'s Ex. 4). The Creditor's attorney responded that "it is not automatic that upon the filing of a petition for bankruptcy relief that a writ of garnishment is to be dissolved as a matter of course." Id.

On November 17, 2022, the Debtor's attorney again contacted the Creditor's attorney via e-mail regarding the dissolution of the Writ and specifically informed the Creditor that BCBS would "not release any of the pre-petition or post petition receivables until [the Creditor's attorney's] office file[d] a Notice of the dissolution of the garnishment." Id. The Debtor's attorney also stated that while the right to the pre-petition funds could be determined at a later date, "the creditor certainly ha[d] a duty to release the garnishment as to the post petition receivables." Id. The Creditor, however, declined to take affirmative action and attempted to shift the responsibility and blame onto BCBS. In response, the Debtor filed the Motion.

On December 20, 2022, the Court held a preliminary hearing on the Motion. At the hearing, the Debtor's attorney informed the Court that due to the Writ, BCBS was holding pre-petition funds of the Debtor in the amount of $11,838.49, which had been garnished pre-petition. The primary focus and concern of the Debtor, however, was to the *continued* garnishment of post-petition funds in violation of the automatic stay. The Debtor's counsel informed the Court that BCBS would continue to garnish post-petition funds until the Creditor moved to dissolve the Writ. Although the Creditor acknowledged that BCBS should not continue to garnish and hold post-

petition funds, it also attempted to deflect blame onto BCBS by pointing out that the funds being held were in the name of the Debtor's P.A., not the Debtor individually. Despite raising this "ambiguity," the Creditor still maintained that it held lien rights to the funds garnished pre-petition and stated that its focus was on maintaining those lien rights.

At the conclusion of the hearing, the Court stated that its immediate concern was to ensure that the Writ be dissolved so that the Debtor's ability to pay his employees would not continue to be adversely affected. The Court ordered the Creditor to dissolve the Writ with BCBS and explicitly stated that the Debtor's future receivables should not be garnished. The Court's ruling that the Creditor was to "immediately file" a Notice of Dissolution in the State Court Action was clear and unambiguous. (Doc. 31).

Approximately two weeks later, on January 5, 2023, the Court held a continued hearing on the Motion. The Court learned that despite the Creditor's initial assurance that it had moved to dissolve the Writ, it had failed to do so. As a result, BCBS was continuing to garnish earnings post-petition, which directly impacted the Debtor's ability to fund payroll. The Creditor informed the Court that its failure to dissolve the Writ was an "oversight." Concerningly, the Creditor also acknowledged that despite its failure to dissolve the Writ, it had filed a "Notice of Intent to Serve Subpoenas Duces Tecum" on non-debtor parties in the State Court Action in-between hearings. (Cr.'s Ex. 5). In response, the Court expressed its disappointment and concern over the Creditor's failure to comply with the Court's order. The Court also reiterated how important it was that the continuing garnishments cease and that the post-petition funds be released because the Debtor's ability to make payroll for his medical office's employees was continuing to be impacted. Following the hearing, which was almost two months after the Petition Date, the Creditor finally took affirmative action to dissolve the Writ. (Cr.'s Ex. 2).

The Debtor asserts that the Creditor's delay in dissolving the Writ resulted in approximately $70,000 being garnished post-petition, which led to him not being able to fund his payroll and temporarily losing several employees integral to the efficient running of his medical practice. The Debtor also testified that approximately one-third of his earnings come from funds owed to him from BCBS, and that the payments go directly into his PA account. (D's Ex. 2). In his post-trial brief, the Debtor asserts that the Creditor violated the automatic stay based solely on the funds garnished post-petition.

### Conclusions of Law

This Case illustrates how matters can escalate when a creditor makes the unilateral decision that its action or inaction does not violate the automatic stay. The facts and circumstances surrounding this Case are straightforward. Pre-petition, the Creditor served a Writ of Garnishment on BCBS, which resulted in an initial pre-petition garnishment of $11,838.49 from funds BCBS owed from services performed by the Debtor. Post-petition, BCBS continued to garnish funds and informed the Debtor that the garnishments would continue until the Creditor took affirmative action to dissolve the Writ. Although the Debtor's attorney immediately notified the Creditor of the bankruptcy filing and contacted the Creditor via email about dissolving the Writ to stop the continued garnishment of post-petition funds, the Creditor declined to do so. The Creditor's refusal to dissolve the Writ, led to the filing of the Motion. At the preliminary hearing on the Motion, the Court unequivocally ruled that the Creditor was required to immediately dissolve the Writ and that BCBS was to release to the Debtor any post-petition funds being held. (Doc. 31). Despite the Court's oral ruling and clear directive in the Order, the Creditor still failed to take affirmative action to dissolve the Writ. It was not until after the Court held a continued hearing

on January 5, 2023, and expressed its concern and dismay that the Creditor had failed to follow the Court's directive, that the Creditor finally took action to dissolve the Writ.

In support of its position, the Creditor asserts that the Writ was not a continuing writ and that pursuant to a recent Supreme Court decision it was "not required to affirmatively dissolve the Writ simply because the Debtor filed for bankruptcy." (Doc. 70, p. 2); see City of Chicago v. Fulton, 141 S. Ct. 585; 208 L. Ed. 384 (2021). The Creditor also attempts to shifts the blame to BCBS and argues, "BCBS chose to withhold the additional funds, not Cadle. BCBS chose to ignore the stay, not Cadle." (Doc. 70, p. 4).

The Court disagrees. First, the Debtor brings the Motion pursuant to 11 U.S.C. §§ 362(a)(1), (a)(2), and (a)(3). In Fulton, the Supreme Court specially addressed § 362(a)(3) and recognized that its ruling did not "settle the meaning of other subsections of [§] 362(a)." Fulton, 141 S. Ct. at 592. Further, the Creditor's interpretation of Fulton, as it relates to § 363(a)(3), expands beyond the narrow confines set forth by the Supreme Court of maintaining the "status quo." Finally, the Creditor's attempt to shift the blame to BCBS is not permissible.

A.     **Legal Standard under 11 U.S.C. § 362**

The automatic stay of 11 U.S.C. § 362 is one of the most crucial protections that a debtor is afforded under the United States Bankruptcy Code. "The automatic stay is necessary to permit the debtor breathing space so that he may reorganize his affairs, free from the harassment of wage garnishments, foreclosure proceedings and repossessions. The scope of the automatic stay is necessarily broad so that debtors may reorganize their affairs in an orderly and equitable fashion." In re Briskey, 258 B.R. 473, 477 (Bankr. M.D. Ala. 2001); see also Mwangi v. Wells Fargo Bank, N.A. (In re Mwangi), 764 F.3d 1168, 1173 (9th Cir. 2014) (quoting Hillis Motors, Inc. v. Haw. Auto. Dealers' Ass'n, 997 F.2d 581, 585 (9th Cir. 1993)) (recognizing that the automatic stay "is

designed to effect an immediate freeze of the *status quo* by precluding and nullifying post-petition actions, judicial or nonjudicial, in nonbankruptcy fora against the debtor or affecting the property of the estate.").

The Debtor alleges that the Creditor violated the automatic stay under §§ 362(a)(1), (a)(2), and (a)(3) which provide that the filing of a petition under the bankruptcy code operates as a stay of:

> (1) the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
>
> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

11 U.S.C. § 362(a).

Further, under 11 U.S.C. § 362(k)(1), "an individual injured by any willful violation of a stay provided by [ § 362] shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). Historically, it has been held that "[a] violation of the automatic stay is willful if the party knew the automatic stay was invoked and intended the actions which violated the stay." Jove Eng'g v IRS (In re Jove Eng'g, Inc.), 92 F.3d 1539, 1555 (11th Cir. 1996). The majority of cases, however, in which specific intent to violate the automatic stay is not required, were decided prior to the United States Supreme Court's decision in Taggart v. Lorenzen, 139 S.Ct. 1795, 1801 (2019).

The issue in Taggart did not arise under § 362(k), but rather in the context of a violation of the discharge injunction. The Supreme Court held that a bankruptcy court "may hold a creditor in civil contempt for violating a discharge order where there is not a 'fair ground of doubt' as to

7

whether the creditor's conduct might be lawful under the discharge order." Id. at 1804. "The standard is an objective one. A person, regardless of his subjective belief, may be subject to contempt sanctions when he violates the discharge order based upon an 'objectively unreasonable understanding' of the order's scope." In re Sanders, No. 8:20-BK-02731-RCT, 2020 WL 6020347, at *2–3 (Bankr. M.D. Fla. Sept. 15, 2020).

Following the Supreme Court's decision in Taggart, "some courts have assumed without deciding that 'willfulness' under § 362(k)(1) changed to include Taggart's 'fair ground of doubt' standard." In re Abril, No. 8:20-BK-08218-RCT, 2021 WL 3162637, at *4 (Bankr. M.D. Fla. June 24, 2021).  The Court will not debate the issue of whether Taggart changed the "willfulness" standard under § 362(k) because, under either standard, the Court finds that the Creditor's actions were willful.

**B.     The Creditor's failure to timely dissolve the writ of garnishment is a willful violation of the automatic stay under § 362(a)(1) and § 362(a)(2).**

Section 362(a)(1) prohibits the "continuation ... of a judicial, administrative, or other action or proceeding against the debtor ...."  As recognized by the Ninth Circuit, a creditor must "dismiss or stay" pending collection actions:

> The continuation against judicial actions includes the maintenance of collection actions filed in state court . . . A party violating the automatic stay, through continuing a collection action in a non-bankruptcy forum, must automatically **dismiss or stay such proceeding** or risk possible sanctions for willful violations pursuant to § 362(h).

Eskanos & Adler, P.C., v. Leetien, 309 F.3d 1210, 1214 (9th Cir. 2002) (emphasis added). The court in Eskanos also cautioned that "the automatic stay requires an immediate freeze of the status quo by precluding and nullifying post-petition actions." Id.; see also In re Myers, 402 B.R. 370, 372 (Bankr. M.D. Ala. 2009) (stating that § 362(a)(1) "makes clear that the 'continuation' of a

8

judicial process, such as a garnishment, to collect a debt that arose before the bankruptcy is stayed by the bankruptcy filing."). The automatic stay also stops "the enforcement against the debtor, or against property of the estate, of a judgment obtained before the commencement of the case." § 362(a)(2). Ultimately, the automatic stay is meant "to shield the debtor from financial pressure during the pendency of the bankruptcy proceeding." Winters By & Through McMahon v. George Mason Bank, 94 F.3d 130, 133 (4th Cir. 1996).

In this case, the Creditor failed to timely either stay or dismiss the pre-petition garnishment action against the Debtor, even *after* the Court directed it to dissolve the Writ.[2] Throughout the case, the Creditor has maintained that it was "not affirmatively required to dissolve the *Writ* simply because the Debtor filed for bankruptcy." (Doc. 70, p. 2). The Creditor's position, however, is incorrect under the facts and circumstances of this case. First, the Creditor incorrectly argues that case law on continuing writs of garnishment is not applicable because it "did not ask for post-petition funds to be held, did not instruct any funds to be held other than pre-petition, and took no action to seek a lien on post-petition funds." Id. at p. 3. The Creditor also impermissibly attempts to shift blame to BCBS by maintaining that "BCBS was not required to hold post-petition funds, but unilaterally elected to continue to garnish funds as provided for by Florida Statute § 77.06 (03)," and that "BCBS chose to withhold additional funds, not Cadle. BCBS chose to ignore the stay, not Cadle." Id. at p. 4. The Creditor's arguments are misguided and not aligned with applicable law.

Under Florida law, a garnishee is required to "retain . . . any deposit, account, or tangible or intangible personal property in the possession or control of such garnishee" until disposition or

---

[2] The Creditor also failed to take appropriate action as to its alleged claim of lien to the pre-petition funds garnished by BCBS. Despite adamantly asserting it had a lien on such funds, the Creditor never filed a Motion for Relief from Stay or other similar motion. See Doc. 70, p. 2 (the Creditor specifically argued that the "case appears to indicate, unavoidable lien rights with respect to the initial $11,838.49 that was garnished.).

9

dissolution of the writ. § 77.06(2), Fla. Stat. (2002). Notably, "[i]f a garnishee fails to retain the property of the defendant or otherwise comply with the writ, the plaintiff may obtain a monetary judgment against the garnishee." Arnold, Matheny & Eagan, P.A. v. First Am. Holdings, Inc., 982 So. 2d 628, 632 (Fla. 2008); see also, § 77.081(1)-(2), Fla. Stat. (2002).

In balancing the risk of liability for a garnishee, the Florida Legislature "has provided immunity for any garnishee acting in good faith." Arnold, 982 So. 2d at 632. Specifically, Florida Statute § 77.06(3) (2002) states:

> In any case *where a garnishee in good faith is in doubt as to whether any indebtedness or property is required by law to be included in the garnishee's answer or retained by it, the garnishee may include and retain the same,* subject to the provisions of s. 77.19 and subject to disposition as provided in this chapter, and in such case the garnishee shall not be liable for so doing to the defendant or to any other person claiming the same or any interest therein or claiming to have sustained damage on account thereof.

(Emphasis added). Therefore, Florida Statute § 77.06(3), "acts as a shield from liability for garnishees who have acted in good faith in accordance with their statutory responsibilities." Arnold, 982 So. 2d at 633. Other than the Creditor's bald assertions seeking to shift blame to BCBS, there is no evidence that BCBS was not acting in "good faith."

Further, the Creditor was on notice that BCBS would continue to garnish funds. Specifically, the response filed by BCBS in the State Court Action in answer to the Writ states: "[g]arnishee will withhold the sum of $11,838.49 and continue to withhold future payments due and owing to the Defendant until further Order of the Court." (Cr.'s Ex. 3). The Creditor was also repeatedly informed by Debtor's counsel that BCBS was continuing to garnish funds. Based on the above, the Court finds that BCBS was acting within the guidelines prescribed by Florida law.

Next, the Court will address the Creditor's misplaced argument which attempts to shift to BCBS the affirmative duty to stop the continuing post-petition garnishment. See In re Elder, 12

B.R. 491, 494 (Bankr. M.D. Ga. 1981) (holding that "[n]o action" by the creditor "is unacceptable; no action is action to thwart the effectiveness of the automatic stay."). In Elder, the court recognized that the creditor is the responsible party "to stop the downhill snowballing of a continuing garnishment," stating:

> Part of what is stayed in 11 U.S.C. [§] 362 is "continuation." Garnishment involves a creditor, a garnishee, and a court. Creditor sets in motion the process. Creditor is in the driver's seat and very much controls what is done thereafter if it chooses. If the "continuation" is to be stayed, it cannot choose to do nothing and pass the buck to the garnishee or the court in which the garnishment is filed to effectuate the stay. Positive action on the part of the creditor is necessary so that "continuation" may be stayed.

Id. Similar to the court in Elder, another bankruptcy court recognized:

> In a garnishment proceeding, no amounts should be seized or withheld from the Debtor's wages after the filing of a bankruptcy petition. It is clear beyond all doubt that garnishing creditors are required to take all necessary action to release their garnishments in order to implement the automatic stay, upon receiving notice of a bankruptcy filing. This is true even if the garnishment process became effective prior to the date of the bankruptcy filing and did not, at the time it first became effective, violate the automatic stay. Indeed, the creditor must not only cease from taking any affirmative action which would violate the automatic stay, it must also take all necessary affirmative action to stop proceedings which are in violation of the automatic stay.

In re Briskey, 258 B.R. 473, 477 (Bankr. M.D. Ala. 2001) (citing In re Johnson, 253 B.R. 857, 861 (Bankr. S.D. Ohio 2000)); see also In re Myers, 402 B.R. 370 at 373 (Bankr. M.D. Ala. 2009) (holding that a "creditor can satisfy its duty either by dismissing the garnishment or by staying it," and that once the creditor has notice of the bankruptcy, it "must take affirmative action with respect to the garnishment and not simply allow it to run its course.")[3]; Skillforce, Inc. v. Hafer, 509 B.R.

---

[3] In Myers, the court accurately noted, "Briskey does not require a garnishing creditor to release its lien on the funds in the hands of the garnishee or the court through which the garnishment runs. Instead, Briskey requires the judgment creditor to take affirmative action to stop the proceedings; that is, to cease further, post-petition wage deductions pursuant to the garnishment and to stop the further distribution of the garnished funds. Nothing in the Briskey holding requires the judgment creditor to lose its lien on those funds garnished prepetition, which remain in the hands of the garnishee or the court through which the garnishment ran." Myers, 402 B.R. at 373.

523, 531 (E.D. Va. 2014) ("A creditor or the creditor's legal representative has an affirmative duty, post-petition, to discontinue any proceeding it has initiated or continued, or to take other appropriate steps to halt that proceeding if the proceeding: (i) jeopardizes or threatens in any way the integrity of the bankruptcy estate, or (ii) exposes the debtor to harassment or coercion or otherwise inhibits the debtor's 'breathing spell from [her] creditors.'").

As previously stated, the Creditor in this case failed to stop the "snowballing" of the Writ, which in turn directly affected the Debtor's finances and his ability to pay his employees.  Upon receiving notice of the Debtor's bankruptcy filing, the Creditor not only failed to take affirmative action to dissolve the Writ or stay the case as to the Debtor in state court, but it also failed to dissolve the Writ after the Court specifically instructed it to do so.  Even more baffling, the Creditor admitted at the continued hearing that it had filed subpoenas on non-debtor parties in the State Court Action, while at the same time failing to dissolve the Writ.  Although the Creditor maintains that its failure to dissolve the Writ was an honest oversight, the fact remains that the Creditor did not prioritize the Court's directive to do so.  This is particularly concerning because, at the hearing on December 20, 2022, the Court emphasized the importance of the Writ being dissolved so that the Debtor could pay his employees who rely upon their wages to support their families.  For the foregoing reasons, the Court finds the Creditor committed a willful violation of the automatic stay under § 362(a)(1) and § 362(a)(2).

    C.    **Fulton is not applicable under the facts and circumstances of this case because the writ of garnishment altered the status quo.**

A recent decision by the United States Supreme Court established the principle "that mere retention of estate property after the filing of a bankruptcy petition does not violate § 362(a)(3) of the Bankruptcy Code." Fulton, 141 S. Ct. at 592.  In Fulton, the Court had to determine whether the City of Chicago's failure to return debtors' vehicles which were impounded pre-petition for

the nonpayment of fines violated § 363(a)(3). In rejecting the idea that § 362(a)(3) encompasses "an affirmative turnover obligation," the Court stated:

> The language used in § 362(a)(3) suggests that merely retaining possession of estate property does not violate the automatic stay. Under that provision, the filing of a bankruptcy petition operates as a "stay" of "any act" to "exercise control" over the property of the estate. Taken together, the most natural reading of these terms – "stay," "act," and "exercise control" – is that § 362(a)(3) prohibits affirmative acts that would disturb the status quo of estate property as of the time when the bankruptcy petition was filed.

Id. at 590. Notably, the Court held that the "phrase 'exercise control' . . . simply extend[s] the stay to acts that would change the status quo with respect to intangible property and acts that would change the status quo with respect to tangible property without 'obtain[ing]' such property." Id. at 592. Simply stated, "§ 362(a)(3) prohibits collection efforts outside the bankruptcy proceeding that would change the status quo." Id. at 591.

Therefore, the Supreme Court's reasoning in Fulton as to why the City of Chicago was not in violation of § 362(a)(3) focused on the fact that the status quo was maintained. The instant case is clearly distinguishable from Fulton because the continued post-petition garnishments materially altered the status quo. The only aspect of this case that is analogous to Fulton is with respect to the funds that were garnished pre-petition. The Debtor, however, is not claiming a stay violation as to those funds.

The instant case is also distinguishable from a Ninth Circuit BAP opinion which held that a city was not required to dismiss a garnishment proceeding, as it had already moved to stay the state court action and was "merely preserv[ing] the status quo" when it chose not to "affirmatively release the frozen bank account funds." In re Stuart, 632 B.R. 531, 542-43 (B.A.P. 9th Cir. 2021). In addition to the city in Stuart immediately moving to stay the non-bankruptcy case, there was also no continuing post-petition garnishment of the debtor's funds. See also, Margavitch v.

13

Southlake Holdings, LLC, Case No. 5:19-bk-05353-MJC, 2021 WL 4597760, at *6 (Bankr. M.D. Pa. Oct. 6, 2021) (finding no violation of the automatic stay because the creditor "maintained the status quo as of the petition date."). Notably, the court in Stuart stated,

> We emphasize that the City's garnishment did not capture any more funds postpetition. The result would likely be different, as in certain cases cited by Mr. Stuart, e.g., In re LeGrand, 612 B.R. 604 (Bankr. E.D. Cal. 2020), if this were a wage garnishment which attached to the debtor's postpetition wages or a bank account garnishment that encompassed postpetition deposits to the account. Here, neither BOA nor the City was actively collecting any debt from Mr. Stuart; staying the State Court Action and maintaining the freeze on the accounts was merely a continuation of the status quo as it existed on the petition date and collected nothing further from Mr. Stuart.

In re Stuart, 632 B.R. at 543, n. 12. Conversely, the Creditor in this case did not move to stay the non-bankruptcy case as to the Debtor and impermissibly attempted to shift the burden to BCBS. Ultimately, the Creditor unabashedly "took the decision-making process into [its] own hands,"[4] when it "advised the Debtor that the Writ is a lien that Debtor could challenge as a preference, but that the law does not require dissolution of a writ automatically upon the filing for bankruptcy." (Doc. 70, p. 9). Under the facts and circumstances of this case, however, the Creditor was required to either stay or dissolve the Writ to prevent the continued post-petition garnishment of funds which altered the status quo.

As the decision in Fulton is not applicable, the Court will consider the Debtor's argument that the Creditor is also in violation of the automatic stay under § 362(a)(3). Specifically, the Debtor asserts that the funds garnished post-petition are property of the estate pursuant to 11 U.S.C. § 1186(a)(2), which provides,

---

[4] See In re Roche, 361 B.R. 615, 622 (Bankr. N.D. Ga. 2005) (recognizing that "[b]y refusing [Debtor's] repeated requests for release of the garnishment and by taking no action of their own, Defendants took the decision-making process into their own hands rather than allowing the court to balance [Debtor's] rights in the property against the Defendants' lien rights.).

> (a) Inclusions. - If a plan is confirmed under section 1191(b) of this title, property of the estate includes, in addition to the property specified in section 541 of this title—
> (2) earnings from services performed by the debtor after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13 of this title, whichever occurs first.

11 U.S.C.A. § 1186 (West).

On March 30, 2023, the Debtor's plan of reorganization was confirmed under 11 U.S.C. § 1191(b), which therefore makes post-petition earnings of the Debtor property of the estate. The Creditor, however, contends that the funds are not property of the estate because the funds belong to the Debtor's P.A., and not to the Debtor individually. This argument places the Creditor in an untenable situation because from the inception of the case, the Creditor has vehemently asserted its lien rights in the funds garnished pre-petition from the same account. The Creditor cannot maintain contradictory positions for the sole purpose of advancing its interests. Further, even assuming, without deciding, that the post-petition earnings cannot be *construed* as "earnings from services performed by the debtor," the Creditor would still be subject to sanctions for failing to dissolve the Writ pursuant to the Court's directive to do so.

## Conclusion

The "snowballing" effect of the Writ resulted in the post-petition garnishment of approximately $70,000 in funds BCBS owed for services performed by the Debtor. Ultimately, the continued garnishments resulted in the Debtor not being able to adequately fund payroll, which led to him temporarily losing several employees whom he considered integral to the smooth and efficient running of his medical practice. The cascade of negative consequences could have been mitigated if the Creditor had moved to stay the State Court Action as to the Debtor or had dissolved the Writ in a timely fashion. Unfortunately, for all parties, the Creditor decided to play the role of the Court and interpret on its own what it deemed the law to be. This resulted in damages to the

Debtor, for which the Creditor will now be held responsible. Further, although the Court is here to adjudicate disputes, the violations of the automatic stay that continued to occur, even after the Court directed that the Writ should be immediately dissolved, is not a good use of judicial resources. Creditors should take note of this. All parties would be in a better position today if the Creditor had not taken matters into its own hands. As the Court has determined that the Creditor willfully violated the automatic stay under 11 U.S.C. § 362, a second trial will be held on the issue of damages. A separate order will be entered consistent with these Findings of Fact and Conclusions of Law.

Bryan K. Mickler, Esquire, is directed to serve a copy of this Order on interested parties who are non-CM/ECF users and to file a proof of service within three (3) days of entry of the Order.